RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAY 22 2013

# 13-71796
NO. _____

FILED/DOCKETED __5/22/13__ HC
DATE   INITIAL

## In The United States Court Of Appeals
## For The Ninth Circuit

IN RE NYOKA LEE, AND TALALA MSHUJA,
*Petitioners,*

v.

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
*Respondent.*

CORINTHIAN COLLEGES, INC., DAVID MOORE,
JACK MASSIMINO, AND ERNST & YOUNG LLP,
*Real Parties in Interest.*

On Petition for Writ of Mandamus to the United States District Court
for the Central District of California

**NYOKA LEE AND TALALA MSHUJA'S PETITION FOR
WRIT OF MANDAMUS AND APPENDIX**

Scott D. Levy
Law Offices of Scott D. Levy PC
1844 Wheeler Street
Houston, Texas  77004
[Tel.] (713) 528-5409
[Fax]  (713) 528-0117
[Email]  levy.scott@mac.com

*Attorney for Petitioners
Nyoka Lee and Talala Mshuja*

# CORPORATE DISCLOSURE STATEMENT

Counsel for the Petitioners certifies the following:

1.  The full names of every party represented by me are: NYOKA LEE and TALALA MSHUJA

2.  The names of the real parties in interest (if the parties named in the caption are not the real parties in interest) represented by me are: N/A

3.  The parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are: N/A

4.  The names of all law firms and other partners or associates that appeared for the party or amicus now represented by me in the trial court or agency are expected to appear in this court are:

    - Scott D. Levy
    - Scott D. Levy & Associates PC
    - Thomas Mauriello
    - Mauriello Law Firm
    - Mark I. Labaton
    - Hilary B. Taylor
    - Kreindler & Kreindler

DATED: May 21, 2013

Respectfully submitted,

Scott D. Levy

Scott D. Levy
Scott D. Levy & Associates PC
Tex. Bar No. 24000598
1844 Wheeler Street
Houston, Texas 77005
Tel: (713) 528-5409
Fax: (713) 528-0117
Email: levy.scott@mac.com

*Attorney for Petitioners*
*Nyoka Lee and Talala Mshuja*

## STATEMENT OF RELATED CASES

There is pending before the Court Relators' appeal at Docket No. 13-55700. This Court previously reversed the district court's dismissal of the case under Rule 12(b)(6) and remanded the case for discovery to determine how the defendant school implemented its recruiter compensation program. *See* Docket No. 10-55037.

# TABLE OF CONTENTS

Rule 26.1 Corporate Disclosure ............................................................... i

Statement of Related Cases ................................................................... ii

Table of Authorities ............................................................................ iv

Introduction ........................................................................................ 1

Relief Sought ..................................................................................... 10

Issues Presented ................................................................................. 11

Procedural and Factual Background .................................................... 11

Reasons for Granting the Writ ............................................................ 16

Conclusion ........................................................................................ 18

Certificate of Service ......................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*BE&K Constr. Co. v. NLRB,*
    536 U.S. 516 (2002)..................................................................3, 5

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.,*
    408 F.3d 1142 (9th Cir. 2001) ........................................17

*Cohen v. U.S. District Court,*
    586 F.3d 703 (9th Cir. 2009) ........................................16

*Hernandez v. Tanninen,*
    604 F.3d 1095 (9th Cir. 2010) ......................................16

*Lee v. Corinthian Colleges, Inc.,*
    655 F.3d 984 (9th Cir. 2011) ........................................11

*Metzler Investment GMBH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008) ........................................8

*Mohawk Indus., Inc. v. Carpenter,*
    130 S. Ct. 599, 175 L. Ed. 2d 458 (2009) ....................16

*Prof'l Real Estate Investors v. Columbia Pictures Indus.,*
    508 U.S. 49 (1993)..................................................................3, 6

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) ........................................1, 6

*UMG Recording, Inc. v. Bertelsmann AG,*
    479 F.3d 1078 (9th Cir. 2007) ......................................10

*United Mine Workers of America v. Illinois State Bar Ass'n,*
    389 U.S. 217 (1967)..................................................................4

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ......................................5

**CONSTITUTIONAL PROVISION**

U.S. Const. amend. I ................................................................... *passim*

**STATUTES**

28 U.S.C. § 1651 ...........................................................................16

28 U.S.C. § 1927 .......................................................................3, 15

31 U.S.C. § 3730(e)(4)(A) ...........................................................11

**RULES**

Fed. R. Civ. P. 11 ............................................................................7

Fed. R. Civ. P. 12(b)(1)................................................ 5, 7, 9, 12, 13

Fed. R. Civ. P. 12(b)(6)................................................... 5, 7, 11, 12

Fed. R. Civ. P. 16 ...........................................................................9

Fed. R. Civ. P. 26 ...........................................................................9

# INTRODUCTION

Petitioners Nyoka Lee and Talala Mshuja (together, "Relators") seek mandamus relief from the district court proceedings compelling Relators to defend against the accusation their lawsuit was a sham while the case is on appeal to this Court. Defendants accuse Relators of fabricating a False Claims Act ("FCA") suit against a for-profit education company for violating the Higher Education Act ("HEA") recruiter incentive compensation prohibition (and against its auditor who concealed the violations in audit opinions to the Government), arguing that the case was baseless and doomed from the start.  The district court has condoned Defendants' obstruction of Relators' prosecution of the case, including Relators appeal to the Ninth Circuit, in a manner that creates a heavy burden on Relators' exercise of their First Amendment right to petition the courts as elaborated in the Supreme Court's *Noerr-Pennington* doctrine.  The right to petition protects the right to meaningful access to the courts, with an exception for "sham lawsuits".  The right to petition the courts is broadly protected:  "This definition [of sham lawsuits] overprotects baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006).

The proceedings in this case evidence a relentless attack by Defendants, condoned by the district court, to deprive Relators of a procedurally correct travel

1

through the justice system and meaningful representation by counsel of their choice. Following a dismissal by the district court, this Court remanded the case and directed permission to amend the complaint. Relators timely amended. In connection with a motion to dismiss for lack of jurisdiction based on alleged public disclosure, the court granted discovery to defendants but not Relators. The court struck applications from Congresswoman Maxine Waters for an extension of time to allow intervention on Defendants' motion to mark all original source documents as confidential. The court struck and returned Relators' submissions, although they had been filed exactly as directed by the Magistrate Judge. The court ruled on both public disclosure and original source, although the later was not ripe for decision. The court struck Relators motion for reconsideration of the order granting one-sided discovery to Defendants. The court refused to address Defendants' threat to the law firm intending to join as co-counsel for Relators, and likewise allowed Defendants to threaten local counsel to the point of filing a motion to withdraw. The district court refused Relators even a modest extension of time to file briefs in opposition to the dual motions to dismiss, even though the School's brief was almost 90 pages in length. The court refused to defer of Defendants' motion for sanctions against Relators' counsel until after the appeal of the dismissal. The court completely disregarded the December 12, 2012 letter from U.S. Senator Frank Lautenberg and seven of his Senate colleagues that this

Defendant – Corinthian Colleges, Inc. – should be investigated for defrauding the federal student loan program. The district court railroaded Defendants' motion to dismiss after third-party counsel declined to get involved. The district court's conclusion that neither Relator had knowledge of the School's recruiter compensation practices, despite their combined thirteen (13) years of employment, is categorically and evidentiarily unsustainable.

The test for sham litigation is that the lawsuit "had to be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors v. Columbia Indus.*, 508 U.S. 49 (1993). The constitutional right to petition is a doctrine that protects unsuccessful lawsuits. "First, even though all the lawsuits in this class are unsuccessful, the class nevertheless includes a substantial proportion of all suits involving genuine grievances because the genuineness of a grievance does not turn on whether it succeeds. Indeed, this is reflected by our prior cases which have protected petitioning whenever it is genuine, not simply when it triumphs." *BE&K Constr. Co. v. NLRB, id.*, 536 U.S. at 532.

Defendants are using sanctions proceedings under 28 U.S.C. § 1927 to assert the sham litigation exception to the First Amendment right to petition the courts. Relators made two requests for relief to the district court, both of which were

3

denied without discussion.[1]  As part of the Defendants' strategy to deny Relators full and meaningful access to the courts, Defendants threatened both a third-party law firm, and Relators' local service counsel, to prevent them from participating as co-counsel on behalf of Relators.  The right to petition includes obtaining legal advice from counsel as necessary for the meaningful exercise of a party's First Amendment rights.  *United Mine Workers of America v. Illinois State Bar Ass'n,* 389 U.S. 217 (1967).  Defendants now seek to add an additional burden to Relators' right to petition this Court of Appeals by seeking over $1.5 million in attorney's fees against Relators' counsel.  These actions have denied, and continue to deny, Relators full and meaningful access to the courts.

Significantly, the sham lawsuit exception to the right to petition the courts is being asserted by Defendants in the context of a sanctions proceeding, without rights to discovery and a full hearing.  Relators' First Amendment right to petition has already been burdened and chilled by the district court, and the refusal to stop the sham litigation proceeding to allow Relators to pursue their merits appeal to this Court will further deprive Relators of full and meaningful access to the judicial system.[2]

---

[1] *See,* Apx. 11-26, Application to Stay, and Apx. 183-193, Ex Parte Application to defer ruling on sanctions motions until Ninth Circuit decides appeal on the merits.

[2] On April 25, 2013, Relators filed an appeal to this Court from the April 11, 2013 order of dismissal for lack of jurisdiction by the district court, which has been

4

Mandamus relief is appropriate because Relators have already been denied meaningful recourse to the court resulting from the threats and interference with third-party counsel who declined to enroll as co-counsel while the Rule 12(b)(1) motions to dismiss were pending. The purpose of Defendants' motions for sanctions is to prevent Relators from prosecuting their appeal. Mandamus is required for this Court to correct the district court's pattern of allowing Defendants to use sanctions proceedings to thwart Relators' First Amendment right to prosecute their appeal. The Ninth Circuit applies the *Noerr-Pennington* rights to petition to all statutory interpretations that could impinge on the First Amendment right to petition. The use of sanctions to block an appeal falls squarely within that analysis.

> In light of *BE&K*'s application of *Noerr-Pennington* to the NLRA, we conclude that the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause. *See White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (holding, before *BE&K*, that because it "is based on and implements the First Amendment right to petition," the *Noerr-Pennington* doctrine is not limited to the antitrust context, but "applies equally in all contexts"). Under the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly

---

docketed as No. 13-55700. This Court previously reversed the district court's dismissal of the case under Rule 12(b)(6) and remanded the case for discovery to determine how the defendant school implemented its recruiter compensation program. *See* Docket No. 10-55037.

provides otherwise." (Internal footnote No. 5:  In this sense, *Noerr-Pennington* is a specific application of the rule of statutory construction known as the canon of constitutional avoidance, which requires a statute to be construed so as to avoid serious doubts as to the constitutionality of an alternate construction. ...).

*Sosa v. DIRECTV, id.*, at 932-932.

A lawsuit should not be condemned as a sham until a reviewing court has concluded that the judicial processes have been abused.  *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 58 (1993) ("recourse to agencies and courts should not be condemned as sham until a reviewing court has 'discern[ed] and draw[n]' the 'difficult line' separating objectively reasonable claims from 'a pattern of baseless, repetitive claims ... which leads the factfinder to conclude that the administrative and judicial processes have been abused.'" *Citing California Motor Transport*, 404 U.S. at 513).  The district court has abused its discretion  -- and continues to do so  -- by conducting sham litigation proceedings seeking over $1.5 million in attorney's fees as retaliation for Relators' exercise of their First Amendment right to petition the courts in a case that has already been partially vetted by the Ninth Circuit.  Defendants have used the threat of sanctions to obtain a procedural advantage in the case, as a tool of intimidation. The School and Ernst & Young each sent a letter threatening to pursue sanctions unless Relators *dismissed their case. See*, Apx. 134-153; 154-155; 128-129.  Ernst & Young's sham litigation motion is simply astonishing given that the district

court did not adopt the public disclosure argument Ernst & Young asserted, but instead found that the public disclosure as to the School also insulated the accountants.

Defendants did not initiate a sanctions action until after the case was dismissed under the FCA public disclosure bar. Sanctions are not sought under Fed. R. Civ. P. 11. Contrary to Rule 11, Defendants waited until the case was dismissed before seeking sanctions.

Defendants assert that jurisdiction under this FCA *qui tam* action was contrived based on the public disclosure that the School used mandatory enrollment quota as part of its recruiter compensation program. This Court has already held that the legality of enrollment quotas under the Higher Education Act had no prior binding legal authority, so the certainty of failure of Relators' claims cannot be based on any case law. Defendants filed two (2) separate sets of motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim before seeking dismissal under the FCA public disclosure bar. The motions to dismiss under Fed. R. Civ. P. 12(b)(1) relied on the disclosure of enrollment quotas in a 2004 class-action lawsuit against the School Defendant to defeat FCA jurisdiction. Defendants now elevate Relators' assertion of FCA jurisdiction to be evidence of a sham lawsuit because the previous disclosure of enrollment quotas was so obvious and prominent. However, in every filing made prior to their motions challenging

jurisdiction, the Defendants have argued that the use of enrollment quotas was consistent with the Safe Harbor Provisions interpreting the recruiter compensation ban. This Court's decision adopted Defendants' arguments in holding that recruiter enrollment quotas are legal under the Higher Education Act. This Court explicitly held that recruiter enrollment quotas could not serve as the basis of a "false statement" within the meaning of the FCA. What is even more remarkable than Defendants' diametric change in position with respect to the legality of recruiter enrollment quotas is the fact that defense counsel also represented the School in the securities class-action case where the public disclosure allegedly occurred. *See, Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) (specifically finding there was no evidence of the company-wide fraud alleged by the Relators and established by their documents).

The district court's new ruling now holds that in some circumstances, enrollment quotas do violate the Higher Education Act. The district court defeated FCA jurisdiction on the basis of the very same enrollment quotas that heretofore were held to be perfectly legal.

> The public disclosures at issue plainly speak to employee compensation based on reaching quotas, which could violate the HEA, as opposed to termination for failure to reach quotas.

Relators have been completely stayed from obtaining discovery by operation of Fed. R. Civ. P. 16 and 26. The district court struck or ignored all evidence proffered by Relators on the School's recruiter compensation practices.[3] The district court is chilling Relators right to appeal the merits. The court continues to allow Defendants to oppress Relators and their counsel.

Defendants are also seeking to put counsel and Relators on trial in the sham litigation proceeding. As part of the sham lawsuit proceeding, Defendants assert misconduct in the attorney-client relationship under the crime-fraud exception to the attorney-client privilege. It is clear error for the district court to force Relators and counsel to defend against a crime-fraud exception because they asserted federal jurisdiction. Defending against this second aspect of the sham lawsuit claim necessarily requires waivers of confidential communications. There is an attorney-client relationship with respect to the communications and evidence provided to the U.S. Department of Justice. There is also the traditional attorney-

---

[3] In this regard, the district court *sua sponte* terminated the School Defendant's motion for protective order on the 789 pages of documents produced by the Relators, thereby keeping them out of evidence. [DKT 177]. The district court also struck the *Ad Rep Performance Flash* reports showing the lead-to-enrollment ratios used to calculate recruiters' success at securing enrollments after that evidence was lodged in strict accordance with Magistrate Nagle's instructions. [DKT 204]. The *Ad Rep Performance Flash* reports were attached as Exhibits to the Affidavit of Relator Nyoka Lee (Ms. Lee's Affidavit was filed in support of Relators' Opposition to the Rule 12(b)(1) motions). Ms. Lee's Affidavit was found by the district court to be a sham affidavit. The district court ignored almost a dozen excerpts from Ms. Lee's deposition testimony that her compensation depended entirely on her recruitment "numbers."

9

client relationship between Relators and legal counsel. The due process protections necessary to defend against crime-fraud allegations have been disregarded by the district court altogether. Relators need to take discovery from defense counsel as to their reasons for delaying the filing of their public disclosure argument as part of the right to present countervailing evidence is not taken into account by the district court. *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078 (9th Cir. 2007). Relators and their legal counsel are being sued for a combined $1.5 million in a sanctions proceeding, without any discovery whatsoever. The district court is forcing Relators and their counsel to try the crime-fraud exception in a sanctions action, without discovery and without separate legal counsel. The district court's cooperation in Defendants' strategy to try the crime-fraud exception before appeal of the merits is a clear abuse of discretion.

## RELIEF SOUGHT

Relators ask the Court to vacate the district court's April 29, 2013 order [DKT 255] denying Relators' application to stay all sanctions proceeding, which are based on the charge that Relators prosecuted a sham lawsuit. The merits of the case have been appealed to this Court so that Relators can fully exercise their Constitutional right to full and meaning access to the courts.

## ISSUES PRESENTED

1.    Whether the district court has improperly managed the case in allowing the Defendants to threaten third-party counsel with sanctions for joining as co-counsel, and thereby caused Relators to be denied their Constitutionally protected right to meaningful access to the court.

2.    Whether the district court has further denied Relators their Constitutionally protected right to meaningful access to the court by forcing Relators to defend against retaliatory sanctions in excess of $1.5 million, without discovery, before this Court decides on the merits of Relators' appeal.  This denial of Relators right to petition is further complicated by the accusation of misconduct in Relators' attorney-client relationship, the defense of which would necessarily involve waiver issues.

## PROCEDURAL AND FACTUAL HISTORY

Defendants Corinthian Colleges, Inc., David Moore and Jack Massimino (together "School" or "School defendants") and Ernst & Young LLP ("EY") were granted dismissal of the case under Fed. R. Civ. P. 12(b)(1) pursuant to the False Claims Act ("FCA") public disclosure bar, 31 U.S.C. § 3730(e)(4)(A).  This case was previously before the Court following dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *See, Lee v. Corinthian Colleges, Inc.*, 655 F.3d 984 (9th Cir. 2011).  Relators' original complaint charged that the School used recruiter

11

enrollment quotas which Relators contended was a prima facie violation of the Higher Education Act ("HEA") ban on paying incentive compensation to recruiters, which made the School ineligible to receive any of the Title IV student financial aid that comprised roughly ninety-percent (90%) of the School's revenues. The Court held that enrollment quotas were legal, but reversed and remanded the cases to determine how the School implemented its written compensation program. After remand, the School defendants and EY both filed a second round of motions to dismiss under Rule 12(b)(6) in response to Relators' First Amended Complaint. Relators alleged that the School uses a formula called a Lead-to-Conversion Ratio ("L-C Ratio") to evaluate recruiter performance. The L-C Ratio is a formula that calculates the percentage of student inquiries that were "converted" or enrolled by the recruiters. Relators, moreover, produced documents called *Ad Rep Performance Flash* reports ("Flash Reports") which are distributed weekly by the School's corporate office to each campus. The Flash Reports show the L-C Ratio for each recruiter working at the campus. Ms. Lee testified that she was routinely evaluated based on weekly Flash Reports.

Public Disclosure of Recruiter Enrollment Quotas

After the two (2) sets of Rule 12(b)(6) motions were filed, the defendants moved to dismiss for lack of jurisdiction under Rule 12(b)(1) arguing that the allegations in the case were already publicly disclosed in testimony given by

Congresswoman Maxine Waters and in a securities class action lawsuit against the School, both of which asserted that the School had mandatory enrollment quotas as the foundation of its recruiter compensation program. Congresswoman Waters and the securities class action complaint each asserted that the recruiter enrollment quotas were, in and of themselves, a violation of the HEA recruiter compensation ban. This was the very same position asserted by Relators in their original complaint, which the Ninth Circuit rejected. This Court subsequently held that enrollment quotas did not violate the HEA, and therefore could not serve as a "false statement" within the meaning of the FCA. It is highly noteworthy that the School's legal counsel in the securities class action suit is the same legal counsel in the instant case, and counsel's knowledge of the enrollment quota allegations that are the basis for the sham litigation claim were known over eight (8) years before it decided to file a Rule 12(b)(1) based on public disclosure.

Relators pointed out to the district court that there were both state and federal government investigations of the School. *See,* Apx 11-26. First, U.S. Senator Frank Lautenberg and seven of his Senate colleagues[4] sent a letter on December 12, 2012 (just 5 days before Relators were deposed) to U.S. Secretary of

---

[4]    The signatories to the December 12, 2012 Letter were Senator Frank R. Lautenberg (D. NJ), Senator Richard Durbin (D. IL), Senator Richard Blumenthal (D. IN), Senator Tom Harkin (D. IA), Senator Jay D. Rockefeller IV (D. WV), Senator Al Franken (D. MN), Senator Jack Reed (D. RI), and Senator Barbara Boxer (D. CA).

Education Arne Duncan requesting an investigation into Defendant Corinthian Colleges, Inc. for engaging in fraud against the federal student financial aid programs.  Apx. 27-29.  Second, the Attorney General for the State of issued a subpoena to Relators' counsel to produce copies of documents and the deposition testimony given by the Relators in this case.[5] Apx. 34-39.  The evidence was already under subpoena by the Illinois Attorney General directly to the School. *See*, Apx. 56-127 (lawsuit instituted by the School against the State of Illinois to block access to the evidence).  Next, Congresswoman Maxine Waters sent a letter to the district court on February 7, 2013 urging the court to delay ruling on the School's expedited application for protective order to seal all of the evidence provided by Relators until U.S. Attorney General Eric Holder, and the Attorneys General of Illinois and other affected States had an opportunity to file briefs making their positions known on the motion to seal this evidence.[6] Apx. 197-198.

---

[5]  As pointed out to the district court, the investigation conducted by the Attorney General for the State of Illinois was on behalf of a coalition of twenty (20) States affected by the massive student financial aid fraud committed by the for-profit education sector.  Apx. 42-55 (testimony of Illinois Attorney General Lisa Madigan and Kentucky Attorney General Jack Conway before Senate Judiciary Committee).

[6]  Congressman Waters' letter was stricken by the district court.  The district court's order characterized the letter from a Member of Congress as an improper *ex parte* communication, instead of circulating it to the parties and allowing comment as required by the Local Rule cited in the order.  Congresswoman Water's choice of a letter no doubt was due to the fact that Defendants filed an expedited application to seal the documents, affording no time for a more formal response.

Congresswoman Waters' testimony attributed enrollment quotas as the cause for the falsification of student financial aid eligibility records committed by recruiters at the School's San Jose campus was one of the public disclosures found by the district court. But as noted above, this Court has already held that enrollment quotas cannot be the basis of a "false statement" under the FCA.

Mandamus is appropriate because Relators' right to full and meaningful access to the courts includes the right to an appeal on the merits of the district court's erroneous decision. The Relators have already been denied additional and effective co-counsel to aid with the prosecution of their claims as the direct result of Defendants' insertion of the sham litigation charge during the time that the merits of the public disclosure argument were being briefed. The burden from defending against the sham litigation charge, with the threat of a judgment against Relators' counsel of more than $1.5 million, is an addition obstacle to prosecuting Relators' appeal. The additional issues with regards to waiver of the attorney-client privilege, both between counsel and the U.S. Department of Justice, and between counsel and the Relators, is a further complicating factor requiring full discovery before Relators are required to respond.

---

Remarkably, the School also argues that the contact with the Congresswoman is one of the grounds sanctions against Relators' counsel under 28 U.S.C. § 1927 due to the Congresswoman's improper letter. This is yet another instance of retaliation against the Relators and their counsel for petitioning the government, conduct that is protected by the Constitution.

15

Relators request that the Court review the district court's orders, and upon review declare that the district court has conducted the proceedings in a manner that has interfered and impaired Relators' full access to the courts as protected by the right to petition in the First Amendment and the Supreme Court's *Noerr-Pennington* doctrine.

## REASONS FOR GRANTING THE WRIT

The justification for granting the writ is compelling in this case because the district court proceedings impair Relators' ability to pursue their appeal. It is the right to appeal itself that is at stake in this petition for mandamus relief. "The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605, 175 L. Ed. 2d 458 (2009). Mandamus is wholly appropriate in this case to secure the Relators' right to appeal the merits to this Court, an essential part of the First Amendment right to petition.

"We have authority to issue a writ of mandamus under the 'All Writs Act,' 28 U.S.C. § 1651." *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010), *citing Cohen v. U.S. District Court*, 586 F.3d 703, 708 (9th Cir. 2009). Mandamus is appropriate where a "particularly injurious" ruling is asserted. *Hernandez, id.*, at 1099. In deciding whether to grant a mandamus petition, the Court should consider: (1) whether there are other adequate means to secure relief; (2) whether

16

the petitioner will be damaged in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the order presents an oft-repeated error or patent disregard of the federal rules; and (5) whether the order raises new and important problems or legal issues of first impression. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1146 (9th Cir. 2001).[7] The district court's order involves most of these factors, the most critical of which Defendants' conduct is obstructing Relators from prosecuting their appeal. The errors cannot be corrected on appeal if Relators' appeal is effectively blocked by crippling sanctions.

The district court gave no recognition whatsoever to the constitutional implications of interfering with Relators' engagement of additional legal counsel, and the effect of Relators' right to meaningfully petition the court. "But whether this class of suits falls outside the scope of the First Amendment's Petition Clause at least **presents a difficult constitutional question**, given the following considerations." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 531-532 (2002) (emphasis added). The district court denied Relators' motion to stop the sham lawsuit proceeding, giving no consideration to the impact that a $1.5 million sanction on Relators or their counsel would have on their appeal in the Ninth

---

[7] All of these factors do not have to be met for mandamus relief to be proper. *Id.* "Indeed, the fourth and fifth will rarely be present at the same time." *Id.*

Circuit. Such a sanction would significantly impact Relators' ability to prosecute their appeal, which is precisely the outcome Defendants are seeking in filing such a motion.

The evidence is especially compelling in support of Relators' claims. For instance, the Federal Reserve of New York issued a report dated April 17, 2013 saying that student loans in the United States have reached $1.0 trillion, exceeding both car loans and all credit card loans. The for-profit education sector accounts for a significant portion of those loans, and there is virtually zero repayment on the for-profit student loans. The Federal Reserve warned that this level of student loans will depress growth in the national economy for years to come.

## CONCLUSION

Relators Nyoka Lee and Talala Mshuja respectfully request that the Court grant its petition for writ of mandamus and vacate the district court's orders. Relators ask the Court to order that no sanctions proceedings based on the sham litigation exception to the First Amendment right to petition be conducted by the district court. The case is now on appeal, and this Court will already be considering the merits of Relators' claims.

Respectfully submitted:


By: _Scott D. Levy_____
    Scott D. Levy
    Scott D. Levy & Associates PC
    Tex. Bar No. 24000598
    1844 Wheeler Street
    Houston, Texas  77005
    Tel:  (713) 528-5409
    Fax:  (713) 528-0117
    Email:  levy.scott@mac.com

    *Attorney for Petitioners*
    *Nyoka Lee and Talala Mshuja*

19

# CERTIFICATE OF SERVICE

I hereby certify that an original and 3 copies of the forgoing document were sent to the U.S. Court of Appeals for the Ninth Circuit and the following parties this 21st day of May, 2013 by Fed Ex Next Day Service:

**Judge Philip S. Gutierrez**
United States District Court
For the Central District of California
Western Division – Los Angeles
312 N. Spring St.
Los Angeles, CA 90012
213-894-1565

**Abraham C. Meltzer**
AUSA - Office of US Attorney
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012
213-894-7155
USACAC.Civil@usdoj.gov

**Jay Majors**
U.S. DEPARTMENT OF JUSTICE
9550
601 D Street NW
Washington, DC 20004
202-307-0264

**Thomas D. Mauriello**
Mauriello Law Firm APC
1181 Puerta Del Sol, Suite 120
San Clemente, CA 92673
949-542-3555
949-606-9690 (fax)
tomm@maurlaw.com

**Blanca F. Young**
**Achyut Jayant Phadke**
Munger Tolles and Olson
560 Mission Street, 27th Floor
San Francisco, CA 90071
415-512-4000
415-512-4077 (fax)
blanca.young@mto.com
achyut.phadke@mto.com

**Brad D. Brian**
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
213-683-9100
213-687-3702 (fax)
brad.brian@mto.com

**Robert B. Hubbell**
**Ryan W. Borho**
Morrison and Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
213-892-5611
213-892-5454 (fax)
rhubbell@mofo.com
rborho@mofo.com

**Ryan George Hassanein**
Morrison and Foerster LLP
425 Market Street, 32nd Floor
San Francisco, CA 94105
415-268-7000
415-268-7522 (fax)
rhassanein@mofo.com

21

By: _Scott D. Levy_
     Scott D. Levy
     Scott D.Levy & Associates PC
     Tex. Bar No. 24000598
     1844 Wheeler Street
     Houston, Texas  77005
     Tel:  (713) 528-5409
     Fax:  (713) 528-0117
     Email:  levy.scott@mac.com

*Attorney for Petitioners*
*Nyoka Lee and Talala Mshuja*